IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


BRYAN ANGLE,                    )
       Plaintiff,           )    C.A. No. 12-249 Erie
                                )
   v.                           )    District Judge Nora Barry Fischer
                                )    Magistrate Judge Susan Paradise Baxter
LT. MURIN, *et al.*,            )
       Defendant.           )


# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.   RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 48] be granted and judgment entered for Defendants. The Clerk of Courts should be directed to close this case.


## II.   REPORT

### A.   Relevant Procedural and Factual History

Plaintiff Bryan Angle, a prisoner incarcerated in the State Correctional Institution at Forest ("SCI-Forest"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Lt. Murin and Sgt. Gibson, corrections officers at SCI-Forest. In his *pro se* complaint, Plaintiff claims that Defendants used excessive force against him and were deliberately indifferent to his well-being in violation of his rights under the eighth amendment to the United States Constitution. In particular, Plaintiff alleges Defendants used excessive force during an extraction from the strip cage and a strip search. Plaintiff seeks a declaratory judgment and compensatory and punitive damages as relief for his claims.

Defendants filed an Answer to Plaintiff's complaint on May 28, 2013. [ECF No. 29]. On October 3, 2013, following discovery, Defendants filed a motion for summary judgment [ECF No. 48], which included a DVD/videotape of the entire incident at issue. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 63] and his own affidavit [ECF No. 66] as evidence of material facts in issue. This matter is now ripe for consideration.

### B.  Standards of Review
#### 1.  Motion for summary judgment under Rule 56

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia

2

v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

### 2. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### C.  Analysis

Plaintiff claims that on July 7, 2011, while housed in a mental health unit, he was "cell extracted, and then placed in the Observation Cell….then released and put in the strip cage." [ECF No. 7, p.2]. Because he refused to "strip out" when he received no response to a request for a smock, an Extraction Team moved in to cuff him and extract him for a forced strip search. [Id.] During the extraction and strip search, Plaintiff alleges that Defendants "piled up on Plaintiff, jumping on him, punching and kneeing him" inflicting "numerous injuries including, but not limited to fingers cut, bruised ribs, and sore and painful genitals, including mental distress." [Id.] An investigation of the extraction by the institution determined that no excessive force was used on Plaintiff, but that Lt. Murin violated policy by continuing the extraction after Plaintiff eventually agreed to cooperate with the strip search. [ECF No. 51-3, at pp.16-17.] The entire event was recorded by a hand-held video camera, which recording is submitted in support of Defendants' motion. The recording includes the post-search medical evaluation of Plaintiff's claimed injuries.

"In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including:  (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Whitley v. Albers, 475 U.S. 312, 321(1986).  The central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Moreover, "a showing of 'significant' or 'serious' injury is not necessary to make an Eighth Amendment claim." Brooks, 204 F.3d at 107, quoting Hudson, 503 U.S. at 8.

4

Here, in defense of Plaintiff's claim that they used excessive force, Defendants argue that the video evidence conclusively proves that "at no time was Plaintiff punched, kneed or jumped on by any of the Officers", and there was no one "near his genitals at the time that he alleges he was being fondled." [ECF No. 49, p. 7.] In addition, Defendants point out that a nurse was present throughout, and that after the strip search was completed and Plaintiff wrapped in his jumpsuit, an evaluation by her concluded that his only injury was "a small laceration on his left ring finger which did not require any treatment." [Id. at 7-8.]

After a complete screening of the entire video evidence of record, Defendants' view of its conclusiveness is upheld. There is no genuine issue of fact to justify continuing the case to trial as not only was no excessive force used on Plaintiff despite his lack of cooperation and continuous taunting of the extraction team, his claims of injury are belied by the videotape.

First, Plaintiff's allegations that excessive force was used during the handcuffing procedure while he lay compliant on the observation cell floor with his hands on his back is not found on the videotape. A viewing of the video recording reflects that an officer places the shield on Plaintiff's back to keep him under control as the handcuffs are placed on his wrists. Inasmuch as Plaintiff had been acting out, taunting and failing to comply with orders during the fourteen minutes on the recording prior to his complying by lying on the floor to be handcuffed for the strip search, it is understandable that the shield was placed on his back during the minute that it took to apply the cuffs in that position.

The videotape evidence reflects that no kicking, punching or extreme pressure was placed on Plaintiff by the officer with the shield as witnessed by the fact that Plaintiff was complaining, threatening and taunting throughout the cuffing procedure; that is, he had enough air to "sing out" in a sarcastic manner, "Assault, assault, assault, assault," before he was raised to a standing position and taken out of the observation cell into the hallway. [ECF No. 51-2, 14:55 of DVD.] At 15:09 on the recording, as Plaintiff is being led out of the cell in a bent over position, he says: "I'm bleeding from my hand. Uh-huh." [Id.] At 15:13, Plaintiff announces: "I can't breathe," two times in succession, both times in a clear voice with no sound of strain on his lungs. For the next five minutes, Plaintiff continues a narrative as he is placed face-down on

5

the hallway floor so that his clothes may be cut off. During this time he asks to see medical, announces that he has been assaulted, threatens to file a lawsuit, "schools" the officers about the right to free speech, taunts them about the appropriate "policy" for a strip search and explains that he needs the money a lawsuit will bring. [Id.] At no time is Plaintiff gasping for air, unable to breathe or speak. Once the clothing is cut off, the officers proceed to search the body. For one brief second when Plaintiff is placed on his right side, an officer moves aside Plaintiff's genitals to finish the strip search. [Id. at 20:02.] The movement was not done in a rough manner and no fondling occurred. Plaintiff is brought to his feet at approximately 20:28. [Id.]The camera angle provided a clear view of both the cutting of the clothing and the body search once the clothing was removed while Plaintiff was on the floor.

A review of the claimed injuries supports the determination that no excessive force was used on Plaintiff. Plaintiff claims that he suffered "fingers cut, bruised ribs, and sore and painful genitals, including mental distress." [ECF No.7, p.2.] At no time on the video recording, including the eleven minutes after the strip search as he is carried back to a cell and the handcuffs removed, does Plaintiff complain of any pain or injury to his chest or his genitals. A medical evaluation by the nurse present discovered a cut on the inside of one finger, a few centimeters in length, which did not even require a bandage. [ECF No. 51-2, at 21:57.]

Plaintiff was never jumped on, kneed or punched. The pressure of the shield on his back for the one minute that the handcuffs were applied was not extreme as Plaintiff was able to speak throughout and never cried out in pain or remarked that the shield was hurting him. Plaintiff was never fondled by Defendants. Summary judgment is appropriate when videotape evidence refutes a complainant's version of events. Scott v. Harris, 550 U.S. 372, 380-81 (2007). Accordingly, judgment should be entered in favor of Defendants on the Eighth Amendment claims.[1]

---

[1] Plaintiff's Complaint and Opposition Brief both claim that Defendants' use of excessive force also shows deliberate indifference to Plaintiff's well-being under the Eighth Amendment. Because the prerequisite to the claim is a showing that excessive force was used, which has been refuted as a matter of law, no separate cognizable deliberate indifference claim is made out by these allegations.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 48] be granted and judgment entered for Defendants. The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 24, 2014

7