IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRYAN ANGLE, II, )
 )
        Plaintiff, pro se )
 )
vs. )  Civil Action No. 1:12-249
 )  Judge Nora Barry Fischer
LT. MURIN, ET AL., )
 )
        Defendants. )

## MEMORANDUM ORDER

Plaintiff Bryan Angle, II, filed this *pro se* civil rights action against Defendants Lt. Murin and Sgt. Gibson on October 18, 2012, (Docket No. 1), and the case was assigned to United States Magistrate Judge Susan Paradise Baxter in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule of Civil Procedure 72.G. The Magistrate Judge issued a Report and Recommendation dated February 24, 2014, (Docket No. 68), which recommended that this Court grant Defendants' Motion for Summary Judgment, (Docket No. 48). The parties were informed that, under the Magistrate Judges Act, any written objections to the Report and Recommendation were due by March 13, 2014. 28 U.S.C. § 636(b)(1). On March 17, 2014, Plaintiff filed his Objections to the Report and Recommendation and a Motion to Change Venue, which this Court construes as a Motion for Recusal.[1] (Docket No. 69). After an independent review of the pleadings, briefs, and documents contained in the record, (Docket No. 51), which includes a videotape recording of the cell extraction and strip search in this case, (Docket No. 51-2), as well as the Magistrate Judge's Report and Recommendation, (Docket No. 68), and Plaintiff's

---

[1] In his Objections to the Report and Recommendation, Plaintiff asserts that the Magistrate Judge was "being deliberately prejudiced towards [him] and being 'one sided.'" (Docket No. 69 at 1). Plaintiff also attacked the Magistrate Judge's reading comprehension and supposed confusion of the issues at hand. *Id.*

1

Objections, (Docket No. 69), the Court adopts and incorporates the Report and Recommendation as the Opinion of Court and accepts the Magistrate Judge's recommendations.

Plaintiff raises four objections to the Report and Recommendation. First, Plaintiff asserts that he should not have been discharged from the psychiatric observation cell because he "had not yet been discharged by the psychiatrist and was still making suicidal ideations." (Docket No. 69 at 1-2). Second, Plaintiff contends that the use of force was unnecessary because Plaintiff had already agreed to comply when Lt. Murin reassembled the extraction team, and Lt. Murin refused to allow compliance. *Id.* at 2-3. Third, Plaintiff asserts that the use of force "could only have been used maliciously and sadistically to cause harm," *id.* at 3, because it allegedly did not serve any penological interest for an officer to "grip my gentals [sic] with Five Fingers, and pull them out and away from [his] body," other than to sexually harass and fondle the Plaintiff, *id.* at 4. Fourth, Plaintiff seeks recusal of the Magistrate Judge for alleged bias. *Id.* at 1, 4.

First, to the extent that Plaintiff maintains that it was improper for Defendants to cell extract and strip search Plaintiff because he had allegedly not yet been discharged by a psychiatrist, he has demonstrated no protected liberty interest in being allowed to stay within the psychiatric observation cell. *See Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3d Cir. 1999) ("Since an inmate is normally incarcerated in prison, Asquith's return to prison [from institutional confinement in a halfway house] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest."); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) ( "[T]he baseline for determining what is 'atypical and significant'-the 'ordinary incidents of prison life'-is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."); *Callender v. Sioux City Residential*

*Treatment Facility*, 88 F.3d 666, 669 (8th Cir.1996) (holding that removing an inmate from a work-release program and returning him to prison did not, under Sandin, deprive the inmate of a liberty interest because prison was "not atypical of what inmates have to endure in daily prison life."). "Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotation marks and alterations omitted). Thus, Plaintiff's Objection to the decision to conduct the cell extraction and strip search is overruled.

Second, even though Lt. Murin may have "violated policy by continuing the extraction after Plaintiff eventually agreed to cooperate with the strip search," as is noted by the Report and Recommendation, the Court agrees that the videotape evidence shows "no excessive force used on Plaintiff despite his lack of cooperation and continuous taunting of the extraction team." (Docket No. 68 at 4-5). The videotape evidence discloses no kicking, punching, or extreme pressure placed on Plaintiff, nor does it demonstrate any injury sustained by Plaintiff, with the exception of a minor cut on the inside of Plaintiff's finger. (Docket No. 51-2). At most, the videotape shows only the use of enough force to pin Plaintiff to the ground as his restraints were applied. *Id.* It also includes the nurse's medical evaluation following the strip search. *Id.*

Turning to Plaintiff's allegation of malicious and sadistic use of force, it is true that no physical injury is necessary to maintain a claim of excessive force under the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not

of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10. In *Hudson v. McMillian*, the Supreme Court further held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. Here, Lt. Murin had given Plaintiff numerous orders and opportunities to comply with the search prior to the application of force, to which he refused. (Docket No. 51-2). Plaintiff even gave a "direct order" to Lt. Murin to answer his questions before he would comply. *Id.* Although he finally agreed to cooperate, he had also previously agreed to comply, only to refuse when Lt. Murin brought him to the strip cage and removed his handcuffs. *Id.* Plaintiff further admitted his disobedience to Lt. Murin's orders. (Docket No. 69 at 2). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. This "necessary withdrawal or limitation of many privileges and rights" is "justified by the considerations underlying our penal system." *Id.* To that end, the Supreme Court has noted that the "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Id.* at 482. Therefore, the use of force was not malicious or sadistic, and Plaintiff's Objection is overruled.

Third, to the extent that Plaintiff alleges injury to his genitals, the Court agrees with the Magistrate Judge that "[f]or one brief second when Plaintiff is placed on his right side, an officer moves aside Plaintiff's genitals to finish the strip search," and that "it was not done in a rough manner and no fondling occurred." (Docket No. 68 at 6). Even if the actual physical contact was improper, the Court finds that no reasonable juror could conclude that it was "repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 9-10. At no time during the 34 minute

videotape did any of the officers attack, taunt, or harass Plaintiff. (Docket No. 51-2). Furthermore, Plaintiff's claim that he "screamed out moments after the officer grabbed [his] genitals" is belied by the videotape evidence, which establishes that he made his statement to "take it easy on the nads" nine seconds after the one-second contact, and only after several officers had already stated within the videotape that the search was complete. (Docket No. 51-2). Accordingly, after having carefully reviewed the videotape evidence and other documents filed of record, the Court finds that Plaintiff's Objection is meritless and should be overruled.

Turning to Plaintiff's Motion for Recusal, 28 U.S.C. § 455 sets forth that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. "Of course, section 455(a), by providing for recusal when a judge's impartiality may 'reasonably be questioned' still mandates an objective rather than a subjective inquiry." *United States v. Bertoli*, 40 F.3d 1384, 1412 (3d Cir. 1994). "The standard for recusal is whether an objective observer reasonably might question the judge's impartiality." *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). Here, there is no evidence of any bias by the Magistrate Judge. Mere disagreement with the result arrived at by the Magistrate Judge is not sufficient to establish bias. Moreover, after an independent review of the videotape evidence and the other record evidence, the Court reaches the same conclusion as the Magistrate Judge. Plaintiff's allegations of bias are meritless and his Motion for Recusal [69] is denied.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Objections [69] are OVERRULED.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Change Venue," which this Court construes as a Motion for Recusal [69], is DENIED.

IT IS FINALLY ORDERED that the Report and Recommendation [68], is adopted as the opinion of the Court, Defendants' Motion for Summary Judgment [48] is GRANTED, and Judgment shall be entered for the Defendants. The Clerk is to mark the case closed.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   March 28, 2014
cc/ecf: All counsel of record

   Bryan Angle, II
   HY2333
   SCI FOREST
   PO BOX 945
   MARIENVILLE, PA 16239
   (Via Regular Mail)